HEARD APRIL TERM, 1872.

## McCANTS vs. WELLS.

A employed B, a commission merchant, to ship cotton by a sailing vessel from Charleston to B's correspondents in Liverpool, to be there sold on A's account. B, with A's consent, delivered the cotton to a sailing vessel then loading for Liverpool. This was in November, and in the usual course the vessel should have arrived at Liverpool in January. She did not sail until the 31st of March, arrived at Liverpool on the 22d of April, and the cotton was sold on the 5th of September, for 39 pence per pound. In January, cotton was selling at 60 pence per pound. There was no evidence of its value on the 22d of April. The action was brought by A against B to recover damages for the delay. The Circuit Judge instructed the jury that B was primarily able, if liable at all: *Held*, Error.

He also instructed them that B was liable if he had not used diligence: *Held*, That he should have informed them what constituted diligence in the relation of the parties.

He also instructed them, if they found for the plaintiff, to find the difference between the value of the cotton at the time it should have arrived in Liverpool, and the price at which it was sold: *Held*, That this also was error.

BEFORE GRAHAM, J., AT CHARLESTON, MARCH TERM, 1872.

Action by Lockwood A. McCants, plaintiff, against Edward L. Wells, defendant.

In the years 1868 and 1869, the defendant and Daniel Lesesne were partners, as commission merchants, in the city of Charleston, under the firm of Lesesne & Wells. Lesesne died in 1871, and this action was brought against the defendant, as survivor, to recover damages for the alleged negligence of the firm in the shipment of cotton from Charleston to Liverpool.

The complaint alleged that on the 14th of November, 1868, the plaintiff, through his factors in Charleston, Gaillard & Minott, delivered nine bags of sea island cotton to Lesesne & Wells, to be carried from Charleston to Liverpool within a reasonable time, and there to sell the same on plaintiff's account. That on the 3d of December thereafter he, through the same factors, delivered to the same firm one other bag of sea island cotton, to be carried and sold with the other nine. That thirty days was a reasonable time for carrying said cotton from Charleston to Liverpool. That through the negligence of Lesesne & Wells it did not arrive in Liverpool until long after that period, and was not sold until the 18th of September, 1869. That in January, 1869, during which month the cotton, if due diligence had been used, would have been received in Liverpool, such cotton as the plaintiff's was worth in Liverpool 60 pence per pound, and that plaintiff's cotton was sold for 39 pence per pound.

At the trial evidence was given tending to show that in November, 1868, the plaintiff was the owner of nine bags of sea island cotton, then in the hands of Gaillard & Minott, his factors, in Charleston. That Gaillard & Minott made a contract with Lesesne & Wells, commission merchants, to ship the cotton by a sailing vessel to Liverpool, to be there put on the market and sold on plaintiff's account; that a sailing vessel, called the Borneo, advertised as an A 1 B. R. ship, up for Liverpool with despatch, was then in the harbor loading for Liverpool. That Lesesne & Wells, with the knowledge and consent of plaintiff, contracted with the master of

the Borneo to take the cotton, and delivered it on board the vessel on the 14th of November, 1868. That on the 3d of December one other bag of sea island cotton, of the plaintiff, was shipped on the Borneo by Lesesne & Wells, who had received it from Gaillard & Minott for shipment on the same terms. That an advance on the cotton was made by Lesesne & Wells, who drew on their correspondents, in Liverpool, for the amount of such advance. That, according to the usual course, the Borneo should have sailed within about thirty days from the time she commenced loading, and should have reached Liverpool some time in January, 1869. That the Borneo did not sail from Charleston until the 31st of March, 1869. That she arrived at Liverpool on the 22d of April. That sea island cotton was selling in Liverpool, in January, 1869, at 60 pence per pound, and that plaintiff's cotton was sold on the 5th of September, 1869, by the correspondents of Lesesne & Wells, at 39 pence per pound.

It was further in evidence, that in January, 1869, the plaintiff complained to Mr. Lesesne of the delay in the sailing of the Borneo; said "it was altogether unlooked for, and that he would very much like to get his cotton off the vessel." Mr. Lesesne replied that it was impracticable; "that the cotton had been drawn on, and that it was among the first put on board."

The charge of the Judge was as follows:

"Messrs. Lesesne & Wells are undoubtedly primarily liable, if liable at all. So as to this notice of their refusing to give an account to the plaintiff about the delay in shipping the cotton, you need not trouble your minds at all. If liable at all, they are primarily liable. Now, the question is, are they liable? The law is, that persons to whom business is entrusted are expected to use diligence in its discharge. Have these men used due diligence? In other words, have they come up to the contract made—have they complied with the usages of trade. If they have, they are not liable. You have heard the testimony. If you find for the plaintiff, you will find the difference between the price of the cotton when it ought to have got there and the price at which it was sold.

"Mr. McCrady asked for the charge that they are responsible for the neglect of their sub-agents; that their sub-agents may be responsible back to them.

"By the Court: I have charged that they are primarily liable, if liable at all. The question is, have Messrs. Lesesne & Wells com-

plied with their contract in shipping that cotton? If they have not, they are liable. If they have, they are not liable."

The defendant gave notice of exceptions to the charge as follows:

*First.* Defendant excepts to the portions of the charge of His Honor containing the expressions "Messrs. Lesesne & Wells are undoubtedly primarily liable, if liable at all; * * * if liable at all, they are primarily liable; now, the question is, are they liable?" * * * because it was not clearly stated to the jury, in connection with above expressions, *for what* the defendants were so liable.

*Second.* Because the general tenor of the charge, as given to the jury, was such as to leave on the minds of the jurors the impression that Lesesne & Wells, in their relations to plaintiff, as proven, were primarily liable to him for default of their sub-agents or of the ship.

*Third.* That it should have been stated to the jury, as matter of law, that an agent will not be liable for acts or omissions of his sub-agents, "unless in the appointment or substitution he is guilty of fraud or gross negligence, or improperly co-operates in the act or omissions."

*Fourth.* That His Honor erred in instructing the jury: "if you find for the plaintiff, you will find the difference between the price of the cotton when it ought to have reached Liverpool, and the price at which it was sold."

The jury found for the plaintiff nine hundred dollars.

Defendant then gave notice of a further exception to the charge, as follows:

The defendant also prays that it be noted in the Judge's minutes that defendant excepts to so much of the charge of the presiding Judge, as directed the jury "in case you find for the plaintiff, you will find the difference between the price of the cotton when it ought to have got there, and the price at which it was sold in England."

A motion for a new trial was made, and refused, and the defendant appealed.

*Simonton & Barker*, for appellant.

*McCrady & Son*, contra.

Oct. 22, 1872. The opinion of the Court was delivered by

WRIGHT, A. J. To determine the liability of the defendant, as the survivor of Lesesne & Wells, in the matter set forth in the complaint, it is necessary first to ascertain, not only the relation in which they stood to the plaintiff, but the nature of the contract between them.

It appears by the brief that Gaillard & Minott, as factors of the plaintiff, doing business in Charleston, having in hand in November, 1868, nine bales of cotton consigned to them by him, with his assent, employed Lesesne & Wells, commission merchants, of the same city, to ship the said cotton to Liverpool, to be there sold by their correspondents. That the shipment was to be made in a sailing vessel, and not a steamer, as the arrival at the foreign port before the middle of January was not desirable. That the Borneo, advertised as an A 1 B. R. ship, was up for Liverpool "with despatch," and the cotton, with the knowledge of the plaintiff and Gaillard & Minott, was shipped by her, consigned to the correspondents of Lesesne & Wells, an advance by the latter having been made on account of the shipment. That on the 3d December, 1868, another bag was shipped under the same circumstances. That the Borneo did not sail until the 31st March, 1869, arriving at Liverpool on the 22nd April following, and the sale took place on the 5th of September ensuing. Complaint was made by plaintiff to Lesesne & Wells of the delay in the sailing of the Borneo. But there was no proof that it was at all imputable to them, or that they in any way could control her action. It also appeared that in January, 1869, the market value of the cotton in Liverpool was 60 pence per ℔, while on the day of its sale it only brought 39 pence per ℔.

There was no evidence of its value on the arrival of the Borneo. No complaint is alleged against the ship, save as to the delay in sailing; nor any against the fitness, ability and character of the consignees; nor was there any testimony to show that the delay in the sale of the cotton after its arrival, to the day it was sold, wrought any loss to the plaintiff. It is not necessary for the solution of the question before us, to determine whether Lesesne & Wells stood in the relation of sub-agents to Gaillard & Minott, or of independent contractors, undertaking for and on behalf of the plaintiff, to ship the cotton to Liverpool, and to make sale of it there.

Their obligation, in either regard, in an undertaking of the character before us, would be subject to the same rules and demands.

The exception to the charge of the Circuit Judge is, that he instructed the jury "that Messrs. Lesesne & Wells are undoubtedly primarily liable, if liable at all. If liable at all, they are primarily liable," without stating for what they were so liable. Because "the general tenor of the charge was such as to leave on the minds of the jurors the impression that L. & W., in their relation to plaintiff, as proven, were primarily liable to him for default of their sub-agents, or of the ship." "That it should have been stated to the jury, as matter of law, that an agent will not be liable for acts or omissions of his sub-agents, unless in the appointment or substitution he is guilty of fraud or gross negligence, or improperly co-operates in the act or omission." "That he instructed the jury, if you find for the plaintiff, you will find the difference between the price of the cotton when it ought to have reached Liverpool and the price at which it was sold." By the language of the charge, as set out in the brief, it was clearly left to the jury to say "whether Lesesne & Wells had used diligence in the discharge of the business entrusted to them; if, in the contract, they had complied with the usage of trade." While their engagement required them to use all the diligence which the law demanded of the particular undertaking, still the Court should have instructed the jury as to what constituted such diligence, and what, in the particular business, the usages of trade required. To say to the jury that due diligence was to be exercised, without defining the degree which the relation required, was to allow the jury to create the standard for themselves, and then decide whether the defendants had come up to it. Mr. Russell, in his work on Factors and Bankers, at p. 259, says: "Whenever the factor or banker has committed, in the course of his employment, any breach of duty, or has overstepped his power, or has been guilty of negligence or fraud, and the principal has suffered a loss in consequence of his factor's misconduct, the latter will be liable to the former to the full extent of such loss, and will likewise forfeit his commission."

The same rule, from the nature of the business of a commission merchant, must be applied to him. Now, if the evidence in the cause brought home to Lesesne & Wells any breach in either of the enumerated particulars, they were liable to the plaintiff to the extent of such damages as ensued from their breach of duty.

If they are to be regarded as the agents of the plaintiff, in the shipment and sale of the cotton through sub-agents, whose employment was necessary, they are not ordinarily responsible for their

default, "if the employment of the sub-agent is authorized by the principal, either expressly or impliedly, by the usual dealings between himself and his principal, and he has used reasonable diligence in his choice as to the skill and ability of such agent."

This general rule, laid down by Mr. Story, (in his work on Agency, Sec. 201,) is admitted by him as subject to exceptions, for he uses the term "ordinarily," which exempts it from the criticism of Mr. Russell, referred to in the argument for the appellees. There may be cases where the agent and the sub-agent would both be liable to the principal. Where, however, the very nature of the agency required the service of sub-agents, the rule above referred to must prevail, particularly where the agents were employed with the assent of the principal, as was the case here. He, the plaintiff, knew that Lesesne & Wells were not the consignees of the Borneo—that they had no interest in her freight receipts, and that some vessel must be employed for the shipment of the cotton. That they could not direct her sailing, as they had no control over her. Where an agent is held to answer for the default of his sub-agent, it is on the principle that he can govern and direct his acts—that he had a controling power over him.

It was impossible for Lesesne & Wells to regulate the sailing of the Borneo, and her delay in starting was the cause of the loss which befell the plaintiff. If the firm of the defendant strictly performed the service for which they were employed, it would be a hard measure of justice to make it responsible for the acts of others, which by no prudence or foresight could they prevent.

We cannot concur with the Circuit Judge in holding the defendant "primarily liable" to the plaintiff. The party, to be so liable, must be the one through whose direct agency the loss has occurred. Now, surely the defendant does not come within this description.

For what is he so held "primarily liable?" Is he any more responsible for the delay in the sailing of the "Borneo" than the plaintiff himself? In regard to the instructions as to the damages: there was no evidence of the value of such cotton in Liverpool when the ship arrived.

It may be that holding the cotton over from its arrival to September was the cause of gain to the plaintiff.

If the sale on arrival would have yielded a better price than was obtained, then the liability of defendant for the loss of the difference will depend on their instructions to the foreign correspondents, and their dealings in regard to the cotton.

For error in the charge of the presiding Judge, as herein expressed, the motion is granted, and a new trial ordered.

*Moses*, C. J., concurred. .

WILLARD, A. J. There should be a new trial. While the difference of market value, at the time when the vessel might be reasonably expected to arrive, and at the time when she actually arrived, is an element of the question of damages, it is clear that the instruction of the Circuit Court to the effect, " if you find for the plaintiff, you will find the difference between the price of the cotton when it ought to have got there, and the price at which it sold," is defective in excluding matters that may have affected the amount of damages.

As the remaining question arising on the charge is not likely to produce any effect on a new trial, and as a new trial must be had, I regard it as unimportant to enter upon an attempt to place a construction on the language of the charge as it regards the liability of the defendant.

It may be remarked, however, that the charge tended to leave the whole question of liability, on the part of the defendants, as a question of the due performance of the contract. This would seem to be placing the case in the light most favorable to the appellant.

The law of the case is so imperfectly developed by the charge, the request to charge, and the exceptions, that it will lead to no important result to discuss it from the standpoint of the view taken at the trial.

It is probable that the attention of the Circuit Court was not called, previous to the delivery of the charge, to the distinctive propositions of law on which the parties based themselves.